## ESTRADA v. REED et al.

### No. 4662.

Court of Civil Appeals of Texas. Amarillo.

Nov. 16, 1936.

Rehearing Denied Dec. 14, 1936.

Prendergast & Stiglich, of Galveston, for appellant.

Follett & Hill and John C. Henderson, all of Angleton, for appellee Lou Reed.

Masterson & Bryan and Carlos B. Masterson, all of Angleton, for appellee Hiram Moore.

Lewis Rogers and Bruce Billingsley, both of Houston, for appellee Federal Land Bank of Houston.

JACKSON, Justice.

N. Estrada, the appellant, instituted this suit in the district court of Brazoria county against the appellees, the Federal Land Bank of Houston, Texas (herein styled the Bank); Hiram Moore (herein designated as Mr. Moore); and Mrs. Lou A. Reed (herein called Mrs. Reed), individually and as survivor of the community estate of herself and her deceased husband, W. F. Reed.

The purpose of the suit is to recover title and possession to certain lands situated in Brazoria county, though the action is not in the form of a suit in trespass to try title.

There are three separate deeds of trust, and a separate sale under each, involved in the litigation. The deed of trust to the Bank is dated May 20, 1918, and executed by W. F. Reed and Mrs. Reed to secure the Bank in the payment of the sum of $10,000. This deed of trust will be hereafter referred to as the "Bank deed of trust," and the sale thereunder as the "Bank foreclosure." The deed of trust dated April 12, 1929,

was executed by appellant to Louis H. Follett, trustee, for the benefit of W. F. Reed and Mrs. Reed, and this we shall refer to as the "first Reed deed of trust," and the sale thereunder as the "first Reed foreclosure." The deed of trust dated in April, 1933, executed by appellant to Louis H. Follett, trustee, for the benefit of Mrs. Reed, and the sale thereunder, are herein designated as the "second Reed deed of trust" and the "second Reed foreclosure."

The appellant for his cause of action pleads as follows:

That Mrs. Reed and W. F. Reed, on May 20, 1918, borrowed the sum of $10,000 from the Bank, gave their note therefor, and executed and delivered to H. M. Gossett, trustee, their deed of trust covering certain real estate in Brazoria county consisting of approximately 841 acres to secure the payment of said note.

That on January 5, 1927, W. F. Reed, by his proper deed, conveyed to his wife, Mrs. Reed, the land covered by the "Bank deed of trust," and on April 12, 1929, Mrs. Reed, joined by her husband, conveyed the land to the appellant by warranty deed. In consideration therefor he assumed the payment of the $10,000 owing to the Bank, and gave two notes, each in the sum of $2,706.54, payable to Mrs. Reed and W. F. Reed, and executed for their benefit the "first Reed deed of trust" to secure the payment of said notes.

That appellant defaulted in the payment of the notes due Mrs. Reed, and W. F. Reed acting alone requested Louis H. Follett, trustee in the "first Reed deed of trust," to sell the land under the provisions thereof. The trustee declined, and W. F. Reed, without the joinder of his wife, on March 4, 1932, appointed E. C. Evans as substitute trustee under said "first Reed deed of trust," and requested him to sell the land by virtue of the powers given therein. On the first Tuesday in April, 1932, E. C. Evans, as such substitute trustee, sold under the "first Reed deed of trust" and conveyed the land to W. F. Reed on April 5, 1932.

That the "first Reed foreclosure" was null and void because the real estate covered thereby was the separate property of Mrs. Reed, and the notes executed were payable to her and W. F. Reed and secured by the "first Reed deed of trust" executed for the benefit of both of them, and, since Mrs. Reed did not join in the appointment of the substitute trustee, nor in the request for the "first Reed foreclosure," such sale was void and a fraud in law upon the wife, Mrs. Reed.

That due to his mistake of the facts and law in believing that Mrs. Reed had title to the property by virtue of the "first Reed foreclosure," the appellant accepted her warranty deed dated April 16, 1933, conveying the land to him, and gave his three notes payable to her, each for the sum of $500, which he secured by the "second Reed deed of trust" on the property, and Louis H. Follett was named as trustee therein. That appellant defaulted in the payment of said $500 notes, and Mrs. Reed requested the trustee to sell under the "second Reed deed of trust," and upon his refusal she appointed J. B. Jackson as substitute trustee, who, upon her request, sold and conveyed the property under the "second Reed deed of trust" to Mrs. Reed.

That Mrs. Reed had no title to convey to appellant at the time she executed to him the second deed to the land since the "first Reed foreclosure" was void, and as she had theretofore, joined by her husband, conveyed the land to appellant, the execution of the second deed by Mrs. Reed and the execution of the $500 notes by appellant were without consideration and void, and said transaction was a nullity.

The appellant then pleads the "Bank foreclosure" under the "Bank deed of trust" through a substitute trustee, A. C. Williams, by G. A. Bart, agent and attorney in fact, through which the land was conveyed to the Bank by trustee's deed on December 8, 1934, and on February 4, 1935, the Bank conveyed the property to Mr. Moore.

That the "Bank foreclosure" was void because W. F. Reed was at the time thereof deceased, a joint owner and maker of the "Bank deed of trust," and the notes secured thereby, and Mrs. Reed had, on March 2, 1935, made application for letters of administration upon the estate of her deceased husband, which administration, though dormant, was still pending. That the "Bank foreclosure" was also void because the sale failed to comply with the requirements of the statute of frauds in sales made by a trustee under a power of sale under mortgages.

That after the commencement of the administration proceedings, Mrs. Reed filed suit in the district court of Brazoria county against the Bank and Mr. Moore in a suit in trespass to try title.

The appellant in his pleadings tendered the indebtedness he alleged to be due Mrs. Reed and the Bank against the property, and asked judgment vesting title to the property in himself.

The court sustained a general demurrer for each of the appellees and dismissed the case, from which action appellant appealed.

Under the facts alleged the land involved became the separate property of Mrs. Reed, subject to the debt of the Bank, when conveyed to her by her husband on June 5, 1927.

"The effect of the husband's deed to the wife, whether the subject of the conveyance be his separate property or the community property, is to constitute the estate the separate property of the grantee. The instrument could have no other meaning, and this is true whether it recites whether the conveyance is for the sole separate use of the grantee or not." 23 Tex.Jur. par. 128, p. 157.

When, on April 12, 1929, the land was conveyed by Mrs. Reed, joined by her husband, to appellant, and as part of the consideration therefor he gave his two notes, each for $2,706.54, secured by the "first Reed deed of trust," the notes became and continued, according to the allegations of the petition, the separate property of Mrs. Reed.

"When separate property has been sold, its proceeds immediately assume the same status as that sold. They will stand in lieu of the thing for which they were given, and occupy precisely the same status as property as they did." 23 Tex.Jur. par. 67, p. 90.

We will assume without deciding that the contention of appellant that the two "Reed foreclosures" were void is correct, and left the title vested by the deed of Mrs. Reed and her husband in appellant, subject to the indebtedness due her and the Bank.

That the Bank's debt was just, due, and unpaid, and that the "Bank deed of trust" is valid, are not questioned. The appellant challenges the "Bank foreclosure" because Mrs. Reed, on March 2, 1935, prior to the elapse of four years after her husband's death, had made application to the proper probate court for administration on the estate of her deceased husband, claiming that under the law the power of sale in the "Bank deed of trust" was revoked by the death of W. F. Reed, or at least suspended for a period of four years or pending the administration of the estate of W. F. Reed, deceased, and that the "Bank foreclosure" was ineffectual to pass title.

Inasmuch as appellant shows by his allegations that the deceased, the mortgagor in the "Bank deed of trust," had conveyed his interest in the property before he died, the power of sale therein was not revoked by his death. Taylor v. Williams et al., 101 Tex. 388, 108 S.W. 815.

"The rule that the holder of a secured claim for money must enforce it through proceedings in the probate court and that his claim cannot be enforced through a sale by the trustee or mortgagee applies in those situations where the land in controversy at all times constituted a part of decedent's estate and after his death became subject to administration. Thus it extends to one who has purchased mortgaged property from the mortgagor. So, upon the death of such purchaser the lien must be established against the estate of the decedent in the probate court in the usual manner and not through a sale by the mortgagee.

"But a contrary rule applies where the land in controversy was not subject to the control of the decedent in his lifetime, nor to that of his representatives after his death, and therefore constitutes no part of his estate for administration. Accordingly, where the mortgagor has sold the property and then has died, although it is held that the mortgagee may present his claim to the estate of the decedent, yet he may proceed in the usual manner to foreclose his lien upon the land held by the purchaser from the mortgagor, and is not required to pursue the remedy provided by the probate statutes. The purchaser from the deceased mortgagor is not divested of any title to the land by a foreclosure of the lien of the mortgagee against the estate of decedent." 14 Tex.Jur. § 363, pp. 131–133.

In Jackson v. Butler, 47 Tex. 423, the Supreme Court says: " 'A judgment lien constitutes no property or right in the land itself.' It merely confers a right to have it sold for the discharge of such lien, to the exclusion of other adverse interests. If the owner conveys the land to another, although it is still charged with the lien, the vendor has no longer any interest in

or title to it. And, as Earle had parted with all of his interest in this land before he died, neither his heirs or administrator had any title to or claim upon it. The lien therefore could not be enforced through the Probate Court."

In Miles et al. v. Coleman Nat. Bank, 37 Tex.Civ.App. 73, 84 S.W. 284, 286, (writ denied), the Court of Civil Appeals said: "We think the conclusion reached by the trial court upon this subject was correct. At the time the deed of trust was fore-closed, and the Coleman National Bank became the purchaser, the estate of Bowen had no interest in the property, as Bowen had sold it to the vendor of appellant long prior to the time of his death. His death did not abate the lien created by the deed of trust, and, his estate not being interested in the property in question, it would not interfere with the policy of the administration of the probate law, so far as concerned his estate, that the claim or the trust lien should have been presented to the administrator of his estate for allowance." See, also, Phillips v. Watkins Land-Mortgage Co., 90 Tex. 195, 38 S.W. 270,. 470.

Under the facts alleged in appellant's petition and the law, the property involved constituted no part of the estate of the deceased, and the administrator, if one had been appointed, would have had no claim upon it.

The appellant's contention, that the court erred in sustaining a demurrer to his petition since he had alleged that the "Bank foreclosure" was void because the sale failed to comply with the statute of frauds under a power of sale in mortgages, is but a conclusion of the pleader based upon no facts disclosed in his petition, and is, therefore, overruled.

"That a mere legal conclusion of the pleader will not stand as against a general demurrer, is well settled by the decisions of our Supreme Court. Avery v. Popper, 92 Tex. 337, 48 S.W. 572, 49 S.W. 219, 50 S.W. 122, 71 Am.St.Rep. 849; Laas v. Seidel, 95 Tex. 442, 67 S.W. 1015.

"A court is not at liberty to read into a pleading which merely states a conclusion of law, the facts necessary to raise the issue to support such conclusion." Bluitt et al. v. Pearson, 117 Tex. 467, 7 S.W.(2d) 524, 526, by the Supreme Court in answer to a certified question.

The judgment is affirmed.