## NATIONAL DEBENTURE CORPORATION et al. v. SMITH et ux.

### No. 10842.

Court of Civil Appeals of Texas. Galveston.

July 20, 1939.

Rehearing Denied Sept. 28, 1939.

T. E. Richards, Jr., of Houston, for appellant Michigan Realty Co.

Raymond E. Buck, of Fort Worth, for appellant National Debenture Corporation.

Bracewell & Spiner, of Houston, for appellees.

CODY, Justice.

On August 28, 1928, S. M. Smith and wife, appellees, borrowed from the National Bond & Mortgage Corporation the sum of $2,250. This sum was the amount of combined indebtedness secured by a vendor's lien and a mechanic's and materialman's lien on their homestead, and such sum was borrowed for the express purpose of renewing and extending such indebtedness and the liens securing their payment. To evidence such indebtedness, the appellees gave their note No. 1 for $2,250, and their note No. 2 for $419.13, and their note No. 3 for $233.28, and additionally secure the payment thereof by a deed of trust. The National Bond & Mortgage Corpora-

tion assigned note No. 1, and the first lien securing its payment to Century Trust Company and Henry M. Laithe, trustees, under the terms and provisions of the assignment and deed of trust dated March 1, 1928. The Century Trust Company was merged into the Baltimore Trust Company, and G. Roy Mueller became the individual trustee in place of Henry M. Laithe; and the said Baltimore Trust Company and G. Roy Mueller, trustees, assigned note No. 1 and the liens securing it to Baltimore National Bank and G. Roy Mueller, trustees. Then, on May 14, 1936, the Baltimore National Bank and Mueller, who, as indicated, were only holding the note and liens securing its payment as collateral security, sold same to National Debenture Corporation. In other words, the National Bond & Mortgage Corporation was the owner of note No. 1, and the liens securing its payment—subject, of course, to provisions of the assignment and deed of trust dated March 1, 1928, aforesaid—until the foreclosure sale to the National Debenture Corporation on May 14, 1936, as aforesaid.

On May 9, 1936, appellee S. M. Smith filed this suit against the National Bond & Mortgage Corporation, the Baltimore National Bank and Keswick Corporation in the form of a trespass to try title—The National Debenture Corporation, having become the owner of note No. 1, and the liens securing it, five days after this suit was filed, had a foreclosure of the property under the power of sale in the deed of trust, and bought such property in on July 6, 1937.

On May 15, 1936, Keswick Corporation filed its answer, consisting of a general denial, a general demurrer and a plea of not guilty; and on June 8, 1936, the National Bond & Mortgage Corporation filed the same character of answer. On September 1, 1937, the Michigan Realty Company intervened in the suit, and alleged that it was the owner of the property, and sued therefor in trespass to try title as against appellees and the National Debenture Corporation. And on the same day the National Debenture Corporation filed a pleading, seeking thereby to have the foreclosure sale to the Michigan Realty Company affirmed, and in the alternative, and in case such foreclosure sale was found to be invalid, suit was pitched on note No. 1, and to foreclose the liens securing its payment.

On October 13, 1937, appellees filed their "Plaintiffs' First Amended Original Petition", and in addition to, and in the alterna-

tive to, their action in trespass to try title, alleged that the other parties to the suit were claiming the property by virtue of a trustee's sale made on the first Tuesday of July, 1937; that the property was appellees' homestead; that the deed of trust and all proceedings thereunder were void. Appellees alleged that the indebtedness had been accelerated more than four years before the foreclosure sale, and was barred by limitations at the time of such sale. Vernon's Ann.Civ.St. art. 5527. Also, that the deed of trust provided for the exercise of certain powers therein conferred upon the failure to pay instalments that should become due, etc., and also provided for the posting of notices of sale and foreclosing same in the manner therein designated, either by trustee or substitute trustee, and that none of the conditions arose under which the holders of note No. 1 were authorized to accelerate the maturity of the note or institute foreclosure proceedings, and no condition arose authorizing the appointment of a substitute trustee; and neither the trustee nor substitute trustee performed the prerequisites in the time and manner provided in the deed of trust in order to authorize the foreclosure, and all the acts pertaining to such sale were void. Appellees further alleged that the purported substitute trustee abused his discretion in that he failed to give plaintiffs notice of the sale, and in that he did not post any notices of sale in the vicinity of the property where interested parties would be apprized of such sale, but posted such notices where they were not visible to the public at large, and that, as the proximate result, the property was sold for only $750, when it was of the reasonable value of $2,250. Appellees further pled that the loan contract was usurious, and that they were entitled to have all payments made by them applied to principal. Appellees further pled that their said homestead was advertised for sale for a sum far in excess of the amount which was lawfully due against it and that they have an equity of redemption, and offered to tender the amount due on the debt, when same was ascertained.

The further pleadings of the parties need not be given.

In response to special issues the jury found that the original trustee, J. Lewis Thompson, Jr., declared the entire amount of note No. 1 to be due in the year 1932. The other findings of the jury convicted the loan of being usurious. If the note really matured in 1932, then it was barred

in 1937, when the foreclosure was had. The court therefore rendered judgment awarding title and possession of the property to appellees free and clear of the debt evidenced by note No. 1, and the liens securing its payment. And defendants, National Bond & Mortgage Corporation and the Baltimore National Bank, were dismissed from the suit at appellees' costs. From this judgment Michigan Realty Company and National Debenture Corporation have appealed.

Appellants, in effect, acquiesce in the finding by the jury that the debt evidenced by the note No. 1 is usurious. They contend that the National Bond & Mortgage Corporation ceased to own the note about a month after it was delivered, and became the mere collecting agent for Century Trust Company and Henry M. Laithe, trustees, and the succeeding trustees. But, as shown above, this is not true. The same evidence which convicts the transaction of usury shows that note No. 1 belonged to the usurer, and ceased to so belong only on May 14, 1936.

█ But, as is pointed out by appellants, and not denied by appellees, there was no pleading that the maturity of the note was accelerated by the original trustee, J. Lewis Thompson, Jr., but the allegation of the pleading is that the acceleration of maturity was by Michigan Realty Company, National Bond & Mortgage Corporation, and Baltimore National Bank. The proof offered to sustain the fact that there had been any acceleration of maturity at all, was proof that E. F. Kelly and R. J. James had told appellee, S. M. Smith, that they wanted him to pay off the note entirely, to pay it completely. In other words, both Kelly and James used words calculated to create the impression on Smith's mind that the maturity of note No. 1 had been accelerated. But there is no evidence to connect Kelly and James as the agents for Trustee J. Lewis Thompson, Jr. The evidence showing them to have been collectors for the National Bond & Mortgage Corporation is not proof that they had authority to accelerate the maturity of one of its notes for nonpayment of an installment. No doubt they were in a position to know if the maturity of a note which was referred to them for collection had been in fact accelerated. And the fact that they created the impression in Smith's mind that the note had been accelerated may be some evidence that it had in fact been so accelerated. But, in view of the authorities, we doubt very much, without deciding it, if such evidence would be sufficient to support a jury finding to the effect that the National Bond & Mortgage Corporation had accelerated the maturity of the note in 1932. It was held in City Nat. Bank v. Pope, Tex. Civ.App., 260 S.W. 903, that the intention of the holder of a note to mature it may be evidenced by declarations, but such declaration alone does not amount to an election to accelerate the maturity; that to be effective as such, it must be followed by affirmative action toward enforcing the declared intention; that "if there is no such affirmative action, and the parties proceed at intervals to make and accept payments in the amounts of the stipulated installments, even though this is irregularly done, as in this case, they thus reaffirm the original contract as written, and, so long as the holder withholds affirmative action, such as placing the note in the hands of attorneys for collection, or bringing suit thereon, *the makers have the right to prevent such action by paying the then accumulated principal and interest.* (Emphasis ours). To the same effect see Commercial Standard Insurance Co. v. Lewallen, Tex. Civ.App., 46 S.W.2d 355; Industrial Investment Company v. Vondersmith, Tex. Civ.App., 104 S.W.2d 553; Crumley v. Ramsey, Tex.Civ.App., 93 S.W.2d 191. If the law were otherwise, the owner of a note would never dare to entrust a note to a bank, or other agent, for collection, for he could never be sure what sort of threats such agent might have employed. Indeed, he could never be sure what construction a jury might place on words which he himself might have used to a defaulting debtor, and for the sake of prudence might have to sue to prevent the defense of limitations, though he might prefer to be lenient.

█ It is quite clear that the evidence in this case is insufficient to support the jury finding that the original trustee, J. Lewis Thompson, Jr., accelerated the maturity of note No. 1 in 1932; and whether he did so or not has not been made an issue by the pleadings, any more than it has been made one by the proof.

It is not necessary to pass upon the other matters, as, upon another trial, the evidence may not be the same.

The judgment of the lower court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.